# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **WELLS FARGO BANK,** | ) | |
| **NATIONAL ASSOCIATION on** | ) | |
| **behalf of itself and as administrative** | ) | |
| **agent and collateral agent for itself** | ) | |
| **and Compass Bank, and COMPASS** | ) | |
| **BANK,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
|      **v.** | ) | **CASE NO. 1:10-CV-02286-TWT** |
| | ) | |
| **DAVID BERKMAN, BTA FUND,** | ) | |
| **LLC, ALAN J. TRAVIS, and** | ) | |
| **KENNETH P. ALEXANDER** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Wells Fargo Bank, National Association, successor-in-interest by merger to Wachovia Bank, National Association ("Wells Fargo") and Compass Bank ("Compass") hereby file their First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) against David Berkman ("Berkman"), BTA Fund, LLC ("BTA"), Alan J. Travis ("Travis") and Kenneth P. Alexander ("Alexander") to recover monies owed pursuant to a guaranty and to avoid a fraudulent transfer from Berkman to BTA.

## The Parties

1.

Wells Fargo is a national banking association with its main office (as designated in its articles of association) being located in the State of South Dakota and its principal place of business being located in the State of California.

2.

Compass Bank is a banking corporation organized and existing under the laws of Alabama with its principal place of business being located in the State of Alabama.

3.

Berkman is a resident of the State of Florida who may be served with process at 41 Ocean Club Drive, Amelia Island, Florida, 32034.   Berkman maintains an office from which he transacts business, including the transactions set forth below, at 3190 North East Expressway, Suite 400, Atlanta, Georgia 30341, as shown in the loan documents at issue in this action.  Berkman is also a manager and member of BTA.

4.

BTA is Florida limited liability company and a resident of the States of Florida and Georgia because its members and managers are residents of the States

of Florida and Georgia and may be served with process through its registered agent CT Corporation System located at 1200 South Pine Island Road, Suite 250, Plantation, Florida 33324.   BTA's members and managers are Defendants Berkman, Travis and Alexander.   Travis's and Alexander's Georgia residences are listed in Exhibit B to the BTA Operating Agreement.

5.

Travis is a resident of the State of Georgia and may be served with service of process at his residence at 3859 Sidestreet, Atlanta, Georgia 30341-1774.   Travis is a managing member of BTA and the President of Berkman Plaza 2, LLC, and transacts business out of an office at 3190 North East Expressway, Suite 400, Atlanta, Georgia 30341.

6.

Alexander is a resident of the State of Georgia and may be served with service of process at his residence at 2859 Guinevere Drive, Atlanta, Georgia 30345.   Alexander is a managing member of BTA.

## Jurisdiction and Venue

7.

Subject Matter Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of South Dakota and Alabama, respectively,

and Defendants are citizens of Florida and Georgia and the amount in controversy exceeds $75,000.

8.

This Court has personal jurisdiction over Berkman because he specifically consented to a proceeding in this Court pursuant to the Guaranty (defined below) and he transacts business within the State of Georgia.

9.

This Court has personal jurisdiction over BTA pursuant to Georgia's Long-Arm Statute, O.C.G.A. § 9-10-91. All three members and managers of BTA have transacted business on behalf of BTA within the State of Georgia; Berkman maintains an office for transacting business in Atlanta, Georgia and Travis and Alexander reside in Atlanta, Georgia. In fact, BTA could not acquire the equity interests of Berkman, or transfer BTA's equity interests back to Berkman, without the action of the BTA managers and members that conduct business from Georgia (Berkman) or are residents of Georgia (Travis and/or Alexander).

10.

Berkman transferred at least $23,000,000.00 and his interest in at least ten (10) Georgia apartment complexes to BTA in 2009. A copy of the document in which Berkman lists the transfers is attached hereto as <u>Exhibit A</u>. These ten

apartment complexes are owned by Georgia limited liability companies.   These transactions were completed by Berkman from his Atlanta, Georgia office.

11.

The following transactions, between Berkman at his Georgia office and BTA's representatives in Georgia, Berkman, Travis and/or Alexander, constitute the transaction of business in the State of Georgia as such term has been defined by the Supreme Court of Georgia:

a)      Berkman transferred to BTA 100% of the ownership of a Georgia limited liability company, Harbor Grove Apartments, LLC, that owns an apartment complex in Fairburn, Georgia known as Harbor Grove Apartments in 2009 (Ex. A.);

b)      BTA subsequently transferred 51% of the ownership of Harbor Grove Apartments, LLC back to Berkman in 2010 and BTA now owns 49% of Harbor Grove Apartments, LLC, with its principal operations in Fairburn, Georgia (a copy of the Assignment signed by Defendants is attached hereto as Exhibit B);

c)      Berkman transferred to BTA a 100% ownership of a Georgia limited liability company, Fairburn Apartments, LLC, that owns and operates an

apartment complex in Fairburn, Georgia known as Harbor Lakes in 2009 (Ex. A);

d)      BTA subsequently transferred 99% of the interest in Fairburn Apartments, LLC back to Berkman in 2010 and BTA now owns 1% of Fairburn Apartments, LLC in Fairburn, Georgia.

e)      Berkman transferred to BTA 100% of the interest in a Georgia limited liability company, Holly Springs, LLC, that owns and operates an apartment complex in Canton, Georgia known as Harbor Creek Apartments in 2009 (Ex. A);

f)      BTA transferred 51% of the ownership in Holly Springs, LLC back to Berkman and thus BTA now owns 49% of Holly Springs, LLC, a Georgia limited liability company (Ex. B);

g)      Berkman transferred to BTA 100% of the interest in a Georgia limited liability company, Shallowford Pointe, L.L.C., that owns and operates an apartment complex in Atlanta, Georgia known as Wynscape Apartments in 2009 (Ex. A); and

h)      BTA transferred back to Berkman 1% interest in Shallowford Pointe, L.L.C.

All of these Georgia LLCs operate within the Northern District of Georgia. All of these transfers involved BTA managers and members and Georgia residents, Travis and Alexander, while located in Georgia and while acting within the scope of their membership in BTA.

12.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Berkman specifically consented to a proceeding in this Court pursuant to the Guaranty (defined below) and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**Factual Background**

13.

Wells Fargo is a successor-in-interest by merger to Wachovia Bank, National Association.

14.

Berkman is an equity holder of Berkman Plaza 2, LLC ("Berkman Plaza") and a guarantor of Berkman Plaza's obligations to Wells Fargo and Compass (the "Lenders").

15.

Berkman Plaza is indebted to Lenders pursuant to certain promissory notes dated January 16, 2007 in the original aggregate principal amount of $53,820,750.00 (the "Promissory Notes").   True and correct copies of the Promissory Notes are attached hereto, together, as Exhibit C.

16.

The loan to Berkman Plaza evidenced by the Promissory Notes is governed by that certain Loan Agreement dated as of January 16, 2007, a true and correct copy of which is attached hereto as Exhibit D (the "Loan Agreement") (the Promissory Notes, the Loan Agreement and all other related loan documents, collectively, shall be referred to as the "Loan Documents").

17.

The obligations of Berkman Plaza under the Loan Documents are guaranteed by Berkman pursuant to that certain Guaranty Agreement dated January 16, 2007, executed by Berkman in favor of Wells Fargo (the "Guaranty"). A true and correct copy of the Guaranty is attached as Exhibit E.

18.

The Guaranty provides, among other obligations, that Berkman unconditionally guarantees payment of all liabilities of Berkman Plaza under the

Loan Documents.   Further, the Guaranty provides that the obligations and liabilities of Berkman pursuant to the Guaranty are primary obligations that do not require recourse first having been made against Berkman Plaza, respectively, or any property held as collateral for the obligations of Berkman Plaza under the Loan Documents.

19.

Wells Fargo is the administrative agent and collateral agent for itself and Compass pursuant to issues arising under or related to the Guaranty and the Loan Documents.

20.

By letter dated July 31, 2009, Wells Fargo notified Berkman Plaza and Berkman that: (i) events of default existed pursuant to Section 11.1(c) (for the failure to meet certain minimum qualified condominium sale contract requirements) and 11.1(r) (related to the discontinuance of construction) of the Loan Agreement, (ii) a default in the observance or performance of Section 8.21 existed for the failure to release or transfer to a bond certain liens filed against the construction project, (iii) as a result of these events of default, the loan commitments were terminated in accordance with Section 11.1 of the Loan

Agreement (the "Default Letter").  A true and correct copy of the Default Letter is attached hereto as Exhibit F.

21.

By letter dated March 29, 2010, Wells Fargo notified Berkman Plaza and Berkman that as a result of the continuing events of default, Wells Fargo declared all outstanding indebtedness under the Loan Documents to be due and payable within ten days of receipt of such letter (the "Demand Letter").  A true and correct copy of the Demand Letter is attached hereto as Exhibit G.

22.

Further, through the Demand Letter, Berkman was notified that, pursuant to O.C.G.A. § 13-1-11, the failure to pay the amounts demanded therein within ten days of receipt of the Demand Letter would cause Berkman to be liable for Wells Fargo's attorneys fees and costs pursuant to the terms of the Loan Documents.

23.

Berkman Plaza and Berkman failed to pay the amounts owed under the Loan Documents within ten days of their receipt of the Demand Letter.

24.

As of July 21, 2010, the outstanding aggregate principal balance due under the Promissory Notes was $14,658,498.67, and the aggregate accrued and unpaid

interest (not including any default rate interest to which the Lenders are entitled) was $17,325.53 for a total due of $14,675,824.20 (not including any default rate interest, late charges, attorneys' fees and costs or other charges to which the Lenders are entitled under the Loan Documents) (such amount, plus any additional unpaid interest, default rate interest, late charges, attorneys' fees and costs or other charges to which the Lenders are entitled under the Loan Documents, the "Outstanding Balance").

25.

Subsequent to the Demand Letter, Lenders, Berkman Plaza and Berkman negotiated, but ultimately failed to agree to, the terms of a forbearance agreement.

26.

On April 30, 2010, upon receiving Berkman's personal financial statements, Wells Fargo learned for the first time that Berkman had transferred $23,000,000 in cash or cash equivalents (the "Transfer Amount") from his personal account to BTA on August 24, 2009 (the "BTA Transfer").

27.

Berkman failed to disclose the BTA Transfer until over eight months after he completed the BTA Transfer.

28.

Although Berkman listed the entire Transfer Amount (in addition to the transfer of other assets described in Paragraph 7 above) on his 2010 personal financial statements as an asset held by BTA, Berkman is only a one-third owner of BTA.

29.

BTA is a limited liability company with three members—Berkman and his business partners Travis and Alexander.

30.

Each BTA member manages the assets he contributed to BTA, but BTA remains the owner of such contributed assets.

31.

Specifically, Section 7.1 of the Operating Agreement of BTA dated as of August 24, 2009 (the "BTA Operating Agreement") requires "the unanimous vote of the Managers and a Unanimous Vote of the Membership Interests [to] distribute Series Assets . . . ."  A true and correct copy of the BTA Operating Agreement is attached hereto as Exhibit H.

32.

Section 11.8 of the BTA Operating Agreement provides that "all funds of the Company shall be deposited in the Company's name in one or more accounts . . . . Withdrawals from any such accounts shall be made upon such signature(s) as the Managers shall, by unanimous vote, authorize."

33.

Substantially as a result of the BTA Transfer, Berkman's cash position decreased from $30,000,000 to $2,000,000 from 2009 to 2010.

34.

Berkman has also pledged $2,000,000 to secure separate obligations to Compass on an unrelated loan.

35.

The remaining $2,000,000 listed as a cash asset by Berkman on his financial statements is, in fact, pledged by Berkman for the unrelated Compass obligations.

36.

Thus, upon and information and belief, Berkman has no remaining liquid assets.

37.

Section 6.4 of the Guaranty requires that the Guarantor "at all times, maintain Liquid Assets of not less than $15,000,000.00.  'Liquid Assets' shall mean the sum of all cash, time deposits and marketable securities" (the "<u>Liquid Assets Covenant</u>").

38.

As a result of the BTA Transfer, Berkman's cash position has been substantially reduced and liquidity eliminated, thereby violating the Liquid Assets Covenant.

39.

BTA was formed by Defendants to shield personal assets of Berkman from the legal claims of Lenders.

40.

The BTA Transfer was made by Defendants with actual intent to hinder, delay, or defraud Lenders.

41.

The BTA Transfer was a transfer to an insider of Berkman—BTA—which is comprised of Berkman and his two business partners, Travis and Alexander.

42.

Berkman has retained management control of the Transfer Amount, but effectively shielded the Transfer Amount by transferring ownership of the Transfer Amount to BTA and by requiring all transfers of BTA property, including the Transfer Amount, to be approved by all members of BTA.

43.

The BTA Transfer was concealed by Defendants and not disclosed to Lenders until approximately eight months after the BTA Transfer occurred, despite Berkman's obligation under the Guaranty to maintain the Liquid Assets Covenant.

44.

Berkman made the BTA Transfer less than a month after having received the Default Letter.

45.

The BTA Transfer was substantially all of Berkman's liquid assets.

46.

The value of the consideration received by Berkman—his one-third interest in BTA—was not reasonably equivalent to the value of the Transfer Amount.

47.

The BTA Transfer leaves Berkman with unreasonably small assets in relation to the loan transaction contemplated by the Promissory Notes and Guaranty.

## COUNT I

### (Breach of Contract – Guaranty)

48.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 47 as though fully set forth herein.

49.

Pursuant to the Guaranty, Berkman has an obligation to pay all amounts owed under the Promissory Notes immediately upon demand.

50.

Through the Default Letter and Demand Letter, Berkman was notified of Berkman Plaza's default under the Promissory Notes and Loan Documents.

51.

Additionally, Berkman has breached the Guaranty by failing to maintain the Liquid Assets Covenant as a result of the BTA Transfer.

52.

Berkman has failed to pay all amounts owed pursuant to the Guaranty.

53.

Berkman's breach of the Guaranty has caused damages to Lenders in the amount of the Outstanding Balance.

## COUNT II
### (Fraudulent Transfer – Actual Fraud)

54.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 47 and 49 through 53 as though fully set forth herein.

55.

This claim is brought pursuant to the Georgia Uniform Fraudulent Transfer Act (O.C.G.A. § 18-2-74(a)(1)) to avoid the BTA Transfer.

56.

The BTA Transfer was made to BTA.

57.

Defendants caused the BTA Transfer with actual intent to hinder, delay or defraud Berkman's existing creditors and/or future creditors.

58.

Among the factors reflecting or evidencing that intent are the following:

a) As a result of the BTA Transfer, Berkman's cash position has been substantially reduced and liquidity eliminated, thereby violating the Liquid Assets Covenant;

b) BTA was formed to shield personal assets of Berkman from the legal claims of Lenders;

c) The BTA Transfer was a transfer to an insider of Berkman;

d) Berkman has retained management control of the Transfer Amount, but effectively shielded the Transfer Amount by transferring ownership of the Transfer Amount to BTA and by requiring all transfers of BTA property, including the Transfer Amount, to be approved by all members of BTA.

e) BTA was formed and the BTA Transfer completed less than one month after Berkman received the Default Letter;

f) The BTA Transfer was concealed and not disclosed to Lenders until approximately eight months after the BTA Transfer occurred, despite Berkman's obligation under the Guaranty to maintain the Liquid Assets Covenant;

g) The BTA Transfer was substantially all of Berkman's liquid assets; and

h) The value of the consideration received by Berkman—his interest in BTA—was not reasonably equivalent to the value of the Transfer Amount.

59.

Thus, the BTA Transfer constitutes actual fraud under O.C.G.A. § 18-2-74(a)(1).

60.

Accordingly, the Lenders are entitled to avoidance of the BTA Transfer such that BTA should return the Transfer Amount to Berkman.

## COUNT III
### (Fraudulent Transfer – Constructive Fraud)

61.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 47, 49 through 53 and 55 through 60 as though fully set forth herein.

62.

This claim is brought pursuant to the Georgia Uniform Fraudulent Transfer Act (O.C.G.A. § 18-2-74(a)(2)(A)) to avoid the BTA Transfer.

63.

The BTA Transfer was made to BTA.

64.

The BTA Transfer was made without Berkman receiving reasonably equivalent value for the Transfer Amount.

65.

The BTA Transfer was made at a time when Berkman was engaged in a transaction (i.e., the transaction contemplated by the Promissory Notes and Guaranty) for which his remaining assets were unreasonably small.

66.

Thus, the BTA Transfer constitutes constructive fraud under O.C.G.A. § 18-2-74(a)(2)(A).

67.

Accordingly, the Lenders are entitled to avoidance of the BTA Transfer such that BTA should return the Transfer Amount to Berkman.

## COUNT IV
### (Preliminary Injunction)

68.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 46, 48 through 52, 54 through 60 and 62 through 67 as though fully set forth herein.

69.

Pursuant to O.C.G.A. § 18-2-77(a)(3) and general principles of equity, an injunction is appropriate to prohibit further disposition by Defendants of the Transfer Amount.

70.

Lenders are likely to prevail on their claims because the Guaranty clearly requires Berkman to maintain specific liquid asset requirements pursuant to the Liquid Assets Covenant, which has been violated as a result of the BTA Transfer, which was actually and constructively fraudulent.

71.

There is a substantial threat Lenders will suffer irreparable injury if the injunction is not granted because BTA may further transfer the Transfer Amount.

72.

This injury outweighs the harm to Defendants because Berkman has been on notice, following execution of the Loan Documents, that he would be required to maintain certain liquid assets.

73.

An injunction would further the purpose of prohibiting debtors from transferring assets to avoid liabilities.

74.

An injunction is necessary to preserve the status quo pending final resolution of this case.

75.

Lenders thus seek a preliminary injunction, enjoining Defendants from further transferring the Transfer Amount while this case is pending.

## COUNT V
### (Civil Conspiracy)

76.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 47, 49 through 53, 55 through 60, 61 through 66 and 68 through 74 as though fully set forth herein.

77.

The Defendants, individually and collectively, came to a mutual understanding and common design to hinder, delay or defraud Berkman's existing creditors and/or future creditors and breach the terms of the Loan Documents and the Guaranty.  Such conduct was wanton and willful and undertaken with the intent to harm Lenders.

78.

Lenders have been damaged as a result of the civil conspiracy entered into by Defendants and are entitled to compensatory damages, an injunction to prevent further damage, punitive damages in an amount sufficient to deter such conduct in the future, and the cost and expenses associated with bringing this action, including attorneys fees.

## COUNT VI
### (Attorneys' Fees - O.C.G.A. § 13-1-11)

79.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 47, 49 through 53, 55 through 60, 62 through 67, 69 through 75, 77 and 78 as though fully set forth herein.

80.

Pursuant to the Guaranty, Berkman is liable to Lenders for attorneys' fees and costs in connection with the enforcement of the Guaranty.

81.

Because Berkman has failed to pay the amounts owed under the Guaranty, Lenders have had to incur significant attorneys' fees and costs in trying to collect the Outstanding Balance.

82.

Through the Demand Letter, Berkman was provided with notice that he would be liable for reasonable attorneys' fees incurred by Lenders in the event that all amounts demanded therein were not paid within ten days of receipt of the Demand Letter.

83.

The amounts owed pursuant to the Guaranty were not paid within ten days of Berkman's receipt of the Demand Letter.

84.

Accordingly, pursuant to the Loan Documents and O.C.G.A. § 13-1-11, Berkman is liable for attorneys' fees and costs in an amount equal to 15 percent of the first $500 of principal and interest owed under the Promissory Notes and 10

percent of such principal and interest owed in excess of $500 due under the Promissory Notes.

## COUNT VII
**(Attorneys' Fees - O.C.G.A. § 13-6-11)**

85.

Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1 through 47, 49 through 53, 55 through 60, 62 through 67, 69 through 75, 77, 78 and 80 through 84 as though fully set forth herein.

86.

Defendants have acted in bad faith, been stubbornly litigious and caused Lenders unnecessary trouble and expense in collecting the amounts sought and relief requested in this Complaint.

87.

Thus, pursuant to O.C.G.A. § 13-6-11, Defendants are liable for the reasonable expenses of this litigation, including attorneys' fees and costs incurred by Lenders in bringing this action.

WHEREFORE, Lenders respectfully request the following relief:

(1)     That summons and service of process issue as to Alan J. Travis and Kenneth P. Alexander;

(2)     That the Court enter judgment in favor of Lenders and against Berkman on all causes of action in this Complaint;

(3)     That the Court enter judgment in favor of Lenders and against Berkman for the Outstanding Balance;

(4)     That the Court enter a preliminary injunction, pending final resolution of this matter, enjoining Defendants from further transferring the Transfer Amount;

(5)     That the Court enter a final judgment requiring Defendants to return the Transfer Amount to Berkman;

(6)     That Lenders be awarded punitive damages due to Defendants' wanton, willful and intentional acts in an amount sufficient to deter Defendants from participating in such conduct in the future;

(7)     That, pursuant to O.C.G.A. § 13-1-11, the Court enter judgment in favor of Lenders and against Berkman for attorneys' fees and costs in the amount of 15 percent of the first $500 of principal and interest owed under the Promissory Notes and 10 percent of such principal and interest owed in excess of $500 due under the Promissory Notes;

(8)     That Lenders be awarded their expenses of litigation, including reasonable attorneys' fees and costs associated with the preparation and prosecution of this lawsuit;

(9)     That the Court tax all costs of this action against Defendants; and

(10)   That the Court grant Lenders such other and further relief as it deems

just and proper.

Respectfully submitted this 17th day of September, 2010.

MᶜGuɪʀᴇWᴏᴏᴅs LLP

/s/ David J. Forestner
Thomas R. Walker
Georgia Bar No. 732755
David J. Forestner
Georgia Bar No. 269177
C. Jordan Myers
Georgia Bar No. 201008
Suite 2100, The Proscenium
1170 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 443-5500
Telecopier: (404) 443-5599
trwalker@mcguirewoods.com
dforestner@mcguirewoods.com
jmyers@mcguirewoods.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE AND
## COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that on the 17th day of September, 2010, I electronically

filed the foregoing **FIRST AMENDED COMPLAINT**, which has been prepared

using 14-point Times New Roman font, with the Clerk of Court using the CM/ECF

system, which will automatically send email notification of such filing to the

following attorneys of record:

Jeremy U. Littlefield
jeremy.littlefield@robbinslawllc.com

Richard L. Robbins
richard.robbins@robbinsfreed.com

/s/ David J. Forestner
David J. Forestner
Georgia Bar No. 269177

McGuireWoods LLP
Suite 2100, The Proscenium
1170 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: 404-443-5500
Telecopier: 404-443-5599
dforestner@mcguirewoods.com

\12439787.11