IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WELLS FARGO BANK,
NATIONAL ASSOCIATION on
behalf of itself and as administrative
agent and collateral agent for itself and
Compass Bank, et al.,

    Plaintiffs,

     v.

DAVID BERKMAN, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:10-CV-2286-TWT

ORDER

This is a breach of contract action.  It if before the Court on the Defendant BTA Fund, LLC's Motion to Dismiss [Doc. 19] and Defendants Alan Travis and Kenneth Alexander's Motion to Dismiss [Doc. 20].  For the reasons set forth below, the Court GRANTS BTA's Motion to Dismiss [Doc. 19] and GRANTS Defendants Travis and Alexander's Motion to Dismiss [Doc. 20].

I.  Background

In 2007, the Plaintiffs, Wells Fargo Bank, N.A. and Compass Bank, made a loan to Berkman Plaza 2, LLC (the "Loan").  Berkman Plaza is not a party to this action.  The Loan financed construction of a condominium development in

Jacksonville, Florida. David Berkman, an equity holder in Berkman Plaza, personally guaranteed the Loan. The guarantee agreement required that Berkman "maintain Liquid Assets of not less than $15,000,000." (Am. Compl., Ex. E.) In July 2009, Wells Fargo sent a default letter to Berkman and Berkman Plaza demanding payment of all outstanding indebtedness under the Loan. (See id., Ex. F.) Pursuant to the guarantee agreement, Wells Fargo sent this letter to Berkman Plaza's Atlanta office. (See id., Ex. E.) Neither Berkman nor Berkman Plaza, however, paid the amounts due under the Loan.

On August 24, 2009, Berkman transferred $23,000,000 from his personal bank accounts to Defendant BTA Fund, LLC (the "BTA Transfer"). BTA is a Florida limited liability company with three members: David Berkman, Alan Travis, and Kenneth Alexander. Berkman is a Florida resident. Travis and Alexander are Georgia residents. In addition to the BTA Transfer, Berkman also assigned equity in several companies, some of which were Georgia companies, to BTA. BTA then transferred some of this equity back to Berkman.

The Plaintiffs learned of the BTA Transfer upon receiving Berkman's personal financial statements on April 30, 2010. (See id., Ex. A.) These statements indicated that Berkman had only $2,000,000 in cash assets remaining, in violation of the guarantee agreement. On July 22, 2010, the Plaintiffs filed suit against Berkman and

BTA seeking to recover money owed under Berkman's personal guarantee [See Doc. 1]. The Complaint also sought to set aside the BTA Transfer under the Georgia Uniform Fraudulent Transfer Act. See O.C.G.A. § 18-2-74(a)(1). On September 17, 2010, the Plaintiffs amended the Complaint to add Defendants Travis and Alexander and add a claim for civil conspiracy [See Doc. 11]. The Plaintiffs argue that "the Defendants, individually and collectively, came to a mutual understanding and common design to hinder, delay or defraud" Berkman's creditors. (Am. Compl. ¶ 77.) BTA has filed a Motion to Dismiss [Doc. 19] for lack of personal jurisdiction and improper venue. Travis and Alexander have also filed a Motion to Dismiss [Doc. 20] for failure to state a claim.

## II. Legal Standards

### A. Motion to Dismiss for Lack of Personal Jurisdiction

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of

such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995).  The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted.  Foxworthy v. Custom Tees, Inc., 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).  If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.  Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010); Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).  If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Madara, 916 F.2d at 1514.

   B.   Motion to Dismiss for Failure to State a Claim

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556

(2007) (citations and quotations omitted).  In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

## III.  Discussion

### A.    BTA's Motion to Dismiss for Lack of Personal Jurisdiction

BTA argues that it is not subject to personal jurisdiction in Georgia.  To determine whether a nonresident is subject to personal jurisdiction, the Court must perform a two-part analysis.  Diamond Crystal, 593 F.3d at 1257-58.  First, the Court must determine whether personal jurisdiction is proper under the state's long-arm statute.  Id.  Next, the Court must decide whether there are sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.  Id.; International Shoe Co. v. Washington Office of Unemployment Comp. and Placement, 326 U.S. 310 (1945).

1.    "Transacting Business" Jurisdiction

The Plaintiffs assert that BTA is subject to personal jurisdiction because it transacts business in Georgia.  The Georgia long-arm statute provides, in pertinent part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of the state, if in person or through an agent, he or she (1) Transacts any business within the state....

O.C.G.A. § 9-10-91.  "Jurisdiction exists on the basis of transacting business in [Georgia] if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice."  Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 517-518 (2006).  Further, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. at 518.  "[A] nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered."  Diamond Crystal, 593 F.3d at

1264 (citing <u>Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames</u>, 279 Ga. 672, 675-76 (2005)).

Here, BTA, acting through its agents, has not purposefully done any act in Georgia related to the BTA Transfer.  Although the Court must consider BTA's "intangible" contacts with Georgia, there is no evidence that BTA had *any* contacts with Georgia related to the BTA Transfer.  BTA is a Florida company.  It is not registered to do business in Georgia.  There are no facts that indicate that Georgia residents Travis or Alexander took any part in the BTA Transfer.  Indeed, the Amended Complaint alleges that Berkman personally carried out the BTA Transfer. (<u>See</u> Am. Compl. ¶¶ 10 & 26.)  The Plaintiffs do, however, allege that "Berkman maintains an office . . . in Atlanta, Georgia" and that the BTA Transfer was "completed by Berkman from his Atlanta, Georgia office."  (Am. Compl. ¶¶ 9-10.) Berkman, however, denies that he currently maintains an office in Georgia and asserts that he completed the BTA Transfer from Florida.  (Berkman Decl. ¶¶ 6, 7.)[1]  Where, as here, a defendant submits declarations challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.

---

[1]Indeed, the Plaintiffs admit that Berkman's Georgia office was related to his work for Berkman Plaza, not BTA.  (Pls.' Br. in Opp'n to BTA's Mot. to Dismiss, p. 4.)

Diamond Crystal, 593 F.3d at 1257.  Here, the Plaintiffs have presented no evidence contradicting Berkman's testimony that he completed the BTA Transfer from Florida.

Further, BTA's contacts with Georgia related to the company's formation do not establish personal jurisdiction under the Georgia long-arm statute.  The Plaintiffs contend that "BTA could not have been formed, and thus the BTA Transfer could not have occurred, without the participation of two Georgia residents who necessarily have conducted business in Georgia."  (Pls.' Br. in Opp'n to BTA's Mot. to Dismiss, at 5.)  Although the BTA Transfer could not have occurred had BTA never existed, the claim to set aside a fraudulent transfer does not *arise from* the company's creation. See Aero Toy, 279 Ga. App. at 517-518 (noting that cause of action must arise out of actions in Georgia to confer jurisdiction under subsection (1) of the long-arm statute). A fraudulent transfer does not "arise out of" every act that made the transfer possible. Such an interpretation would subject companies to personal jurisdiction wherever their agents took action during the company's formation.  Indeed, no company could commit a tort or breach a contract had it never been created.

Also, the formation of BTA is not included in the definition of "transfer" under the Georgia Uniform Fraudulent Transfer Act.  O.C.G.A. § 18-2-71(12) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and

includes payment of money, release, lease, and creation of a lien or other encumbrance." O.C.G.A. § 18-2-71(2). The fraudulent transfer in this case did not occur until Berkman disposed of his money by transferring it to BTA.

Finally, BTA's unrelated contacts with Georgia do not satisfy the long-arm statute. As discussed above, to confer personal jurisdiction, the cause of action must "arise from" or be "connected with" a purposeful act in Georgia. Aero Toy, 279 Ga. App. at 517-518; see also Pratt & Whitney Canada, Inc. v. Sanders, 218 Ga. App. 1, 3 (1995) (despite corporate defendant's extensive commercial contacts with Georgia, long-arm statute "requires that the cause of action arise out of its activities within the state."). The transactions involving Georgia entities referenced by the Plaintiffs are not related to the BTA Transfer. (See Pls.' Br. in Opp'n to BTA's Mot. to Dismiss, at 6-8.) These transactions assigned interests in real estate developments unrelated to the Loan or the BTA Transfer. Thus, the Plaintiffs have not shown that BTA committed a purposeful act in Georgia related to the allegedly fraudulent BTA Transfer. For this reason, BTA is not subject to personal jurisdiction under subsection (1) of the Georgia long-arm statute.

2.   Conspiracy

The Plaintiffs also argue that BTA is subject to conspiracy jurisdiction. "[U]nder the theory of conspiracy jurisdiction, the in-state acts of a resident

co-conspirator may be imputed to a nonresident co-conspirator so as to satisfy the specific contact requirements of the Georgia Long Arm Statute." <u>Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC</u>, 305 Ga. App. 283, 294 (2010).   In <u>Hyperdynamics</u>, the plaintiff argued that resident and nonresident defendants had conspired to induce the plaintiff to participate in a financing scheme by misrepresentation and concealment.  Notably, the plaintiff alleged that the resident defendants concealed their relationship and financial interests, made misrepresentations in a subscription agreement, and doctored trading records.  The court found that the allegations, if true, supported conspiracy jurisdiction over the nonresident defendants.

By contrast, in <u>Coopers & Lybrand v. Cocklereece</u>, 157 Ga. App. 240 (1981), the plaintiff alleged a conspiracy between resident and nonresident defendants.  The court declined to exercise jurisdiction, reasoning that "the mere allegation that a non-resident is a co-conspirator and through the conspiracy is chargeable with the acts of another conspirator within this state or that the act of the non-resident without the state, without more, ultimately results in an injury to a citizen of this state, does not establish a 'contact' with this forum in the absence of implicit or explicit evidence of purposefully sought activity with or in Georgia by the non-resident."  <u>Id.</u> at 246.

Here, unlike <u>Hyperdynamics</u>, the Plaintiffs have not shown that any Defendant took action in Georgia related to the BTA Transfer.  Rather, the Plaintiffs baldly assert that "[t]he Defendants . . . came to a mutual understanding and common design to hinder, delay or defraud Berkman's existing creditors."  (Am. Compl. ¶ 77.)  "[T]he bare existence of a conspiracy," however, "is not enough to support long arm jurisdiction without a further showing of a 'contact' with the forum jurisdiction." <u>Cocklereece</u>, 157 Ga. App. at 246.  Unlike <u>Hyperdynamics</u>, the Plaintiffs do not allege that Travis, Alexander, Berkman, or BTA performed any acts in Georgia related to the alleged conspiracy or the BTA Transfer.  <u>See</u> <u>Hyperdynamics</u>, 305 Ga. App. at 295 (listing resident defendants' multiple activities in Georgia in furtherance of alleged conspiracy).  The conclusory allegation that BTA was involved in a conspiracy, without more, is insufficient to support conspiracy jurisdiction in Georgia.

### 3.   Alter Ego

Finally, the Plaintiffs argue that BTA is subject to personal jurisdiction under an alter ego theory.  Specifically, the Plaintiffs contend that because BTA is a sham corporation, Travis' and Alexander's contacts with Georgia can be imputed to BTA. The Plaintiffs do not cite any case law supporting the proposition that a limited liability company is subject to personal jurisdiction in every state in which its

members reside.[2]  Here, as discussed above, there is no evidence that either Travis or

Alexander performed any acts in Georgia related to the allegedly fraudulent BTA

Transfer.  Further, even assuming alter ego jurisdiction satisfies the Georgia long-arm

statute, the Plaintiffs have not shown that BTA was the alter ego of its members.  The

Plaintiffs have produced no facts showing that BTA's members disregarded corporate

formalities or that there was such unity of interest that "separate personalities of the

corporation and the owners no longer exist."  Dearth v. Collins, 441 F.3d 931, 934

(11th Cir. 2006).  Thus, personal jurisdiction is improper under an alter ego theory.

      4.    <u>Due Process</u>

Having found that BTA is not subject to personal jurisdiction under the Georgia

long-arm statute, it is unnecessary to determine whether personal jurisdiction would

comport with federal due process.

      B.    <u>The Plaintiffs' Motion for Limited Discovery</u>

---

[2]<u>Exter Shipping Ltd. v. Kilakos</u>, 310 F. Supp. 2d 1301 (N.D. Ga. 2004), cited by the Plaintiffs, dealt with the exercise of personal jurisdiction over members of a sham company based on the company's contacts with the forum.  Here, the Plaintiffs seek to exercise jurisdiction over a company based on the acts of its members.  The other case cited by the Plaintiffs, <u>Dearth v. Collins</u>, 441 F.3d 931 (11th Cir. 2006), sets forth the standard for piercing the corporate veil but does not address personal jurisdiction.

The Plaintiffs have requested limited discovery on the subject of personal jurisdiction.  The Plaintiffs rely on Steinberg v. Barclay's Nominees (Branches) Ltd., No. 04-60897-CIV, 2007 WL 4287662 (S.D. Fla. Dec. 5, 2007), to support their request.  In Steinberg, the plaintiff, a receiver in a bankruptcy proceeding, requested discovery on personal jurisdiction.  The court allowed limited discovery, noting that the case "present[ed] an atypical situation."  Id. at *2.  The court reasoned that although usually "an attorney can turn to his client and obtain relevant information about the defendant's contacts with a particular forum . . . the Receiver ha[d] been placed in charge of entities, the controlling person of which [was then] an adversary." Id.  Here, by contrast, the Plaintiffs have relevant information regarding the Defendants' contacts with Georgia and the BTA Transfer.  Thus, unlike Steinberg, it is not necessary for the Plaintiffs to conduct discovery to obtain information relevant to personal jurisdiction.

Further, the Plaintiffs have not provided any facts they hope to discover that would establish personal jurisdiction over BTA.  See id. ("[T]he Court recognizes that there may be times when it would be an abuse of discretion to allow such discovery if there are no legitimate grounds upon which jurisdiction could lie.") Specifically, the Plaintiffs seek to discover the location of bank accounts that Travis and Alexander allegedly transferred to BTA.  (See Pls.' Br. in Opp'n to BTA's Mot. to Dismiss, at

24.)  The Plaintiffs argue that this information would "provide the court with evidence of the number and quality of contacts with Georgia, and the extent to which BTA is a sham entity created merely to shield Berkman's assets from creditors." (Id.)  The bank accounts that Travis and Alexander allegedly transferred to BTA, however, are not related to the BTA Transfer.  The Plaintiffs assert that Berkman, not Travis or Alexander, fraudulently transferred assets to BTA.  As discussed above, such unrelated contacts do not establish jurisdiction under O.C.G.A. § 9-10-91(1).  Thus, even if discovered, the information sought by the Plaintiffs would not establish personal jurisdiction.  For these reasons, the Plaintiffs are not entitled to limited discovery.

> C.   BTA's Motion to Dismiss for Improper Venue

The Defendant also argues that venue is improper.  Under 28 U.S.C. § 1391(a)(2), venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).  Here, the Loan documents were executed in this district.  Thus, the Plaintiffs' claim to recover money owed under the Loan arose from events that occurred in this district. For this reason, venue is proper.

> D.   Travis and Alexander's Motion to Dismiss

Defendants Alan Travis and Kenneth Alexander have moved to dismiss under Federal Rule 12(b)(6).  Specifically, the Defendants contend that the Plaintiffs' civil conspiracy claim does not meet the requirements of Federal Rule 8.  See FED. R. CIV. P. 8.  To survive a motion to dismiss, a complaint must state a "plausible claim for relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.  This standard requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In Twombly, the plaintiff alleged that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry" into the local telephone provider market.  Id. at 551.  The plaintiff supported this allegation by asserting that the defendants had engaged in a "parallel course of conduct."  Id.  The plaintiff argued that "the absence of any meaningful competition . . . the parallel course of conduct," and "other facts and market circumstances" led to the inference that the defendants had engaged in a conspiracy.  Id.  The Supreme Court dismissed the plaintiff's claim, noting that "nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy."  Id. at 566.  The

Court reasoned that the facts alleged in the complaint were "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy." Id. at 554.

Here, Count V of the Amended Complaint alleges that the Defendants "came to a mutual understanding and common design to hinder, delay or defraud Berkman's existing creditors and/or future creditors." (Am. Compl., ¶ 77.) This statement is a legal conclusion that merely tracks the elements of a fraud claim. See id. at 555 ("[F]ormulaic recitation of the elements of a cause of action will not do" to survive 12(b)(6) motion to dismiss.); Parrish v. Jackson W. Jones, P.C., 278 Ga. App. 645, 649 (2006) ("The essential element of conspiracy is the charge of a common design" consisting of a "mutual understanding.").

The Plaintiffs, however, argue that their conspiracy claim is supported by factual allegations elsewhere in the Amended Complaint. Specifically, the Plaintiffs note that a conspiracy can be plausibly inferred from the relationship between the Defendants and the structure of BTA. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 10-11.) Indeed, the Amended Complaint states that Travis and Alexander were members of BTA. The Plaintiffs also stress that Berkman's obligations under the personal guarantee existed at the time the Defendants formed BTA. As in Twombly, these facts are consistent with conspiracy, but equally consistent with lawful conduct.

See Twombly, 550 U.S. at 554 (noting that factual allegations were "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive" behavior).  Ultimately, the Plaintiffs ask the Court to infer a conspiracy from the existence of a business relationship between the Defendants and the presence of Berkman's personal guarantee.  Doing so, however, would subject members of limited liability companies to conspiracy liability for the acts of fellow members based merely on conclusory allegations of "mutual understanding" and "common design."  That is not plausible.

The cases cited by the Plaintiffs do not compel a different result.  In In re Carroll, No. 09-80672, 2009 Bankr. LEXIS 4152 (Bankr. N.D. Ga. Dec. 22, 2009), the complaint alleged that a bankruptcy debtor "made a number of misrepresentations and omissions . . . regarding the value of her interest [in] certain items of real and personal property."  Id. at *3-4 (quotations omitted).  The complaint also asserted that the debtor was an attorney "well educated in real estate matters."  Id.  The court found that these factual allegations led to an inference that the debtor knowingly made false statements.  Similarly, in In re Lackey, No. 09-9006, 2009 Bankr. LEXIS 3730 (N.D. Ga. Oct. 4, 2009), the complaint accused the defendant of "knowingly falsely claiming that the Plaintiff was the Father of her child in order to obtain child support."  Id. at

*4.  The court found that the factual allegations supported an inference that the defendant made knowingly false statements.

Here, unlike In re Carroll and In re Lackey, the Amended Complaint contains no allegation of false statements by either Travis or Alexander.  Making false statements may imply unlawful behavior, especially when the defendant should know better.  Where the defendant is knowledgeable about real estate, misrepresenting the value of real estate implies knowing falsity.  Likewise, where the defendant is the mother of a child, incorrectly identifying the child's father implies knowing misrepresentation.  Starting an LLC, however, does not imply fraud.  Thus, as in Twombly, the Plaintiffs "have not nudged their claims across the line from conceivable to plausible."  Id. at 547.  For this reason, the civil conspiracy claim against Travis and Alexander should be dismissed.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS BTA's Motion to Dismiss [Doc. 19] and GRANTS Defendants Travis and Alexander's Motion to Dismiss [Doc. 20].

SO ORDERED, this 16 day of February, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge